The FED–MART CORPORATION, a
California Corporation,
Plaintiff-Appellant,

v.

The UNITED STATES of America,
Defendant-Appellee.

No. 75–2485.

United States Court of Appeals,
Ninth Circuit.

March 15, 1978.

Lawrence S. Branton, of White, Price, Peterson & Robinson, San Diego, Cal., for plaintiff-appellant.

Gilbert E. Andrews, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before BROWNING and MERRILL, Circuit Judges, and HARPER, Senior District Judge.*

HARPER, Senior District Judge.

Appellant, Fed-Mart Corporation, appeals from the judgment of the District Court in favor of the United States in consolidated actions for the refund of Federal income taxes for the taxpayer's fiscal years 1967 through 1970. The appellant contends that it is entitled to a debt discount deduction arising from the exchange of junior subordinated 6½% debentures for shares of its outstanding stock.

Fed-Mart is a California corporation engaged in the business of discount retailing. On March 3, 1967, Fed-Mart made an exchange offer to the holders of its common stock wherein it proposed to exchange up to $5,000,000 of 6½% junior subordinated debentures, due February 1, 1987, for up to 400,000 of its more than 1,000,000 outstanding shares of no par common stock. The rate of exchange was to be $100.00 principal amount of debentures for every eight shares of common stock.

The primary purpose for the exchange offer was to effect the withdrawal of Morris Jaffe from corporate ownership and management in a manner agreeable to him. At the time of the offer, Jaffe was the holder of the largest single block of Fed-Mart's common stock. Disagreements between Jaffe and Sol Price, Chairman of the Board and President of Fed-Mart, had created problems in the operation and management of the taxpayer and had contributed to a decline in earnings in the three years preceding March, 1967.

Fed-Mart's offer was accepted to the extent that 226,872 shares of common stock were exchanged for $2,835,900 principal amount of debentures. These shares constituted approximately 22% of the outstanding shares at that time. At the time of the exchange, the over-the-counter bid price for shares of Fed-Mart's common stock was 7⅝ dollars per share.

Thereafter Fed-Mart claimed that a bond discount had arisen as a result of the issuance of its debentures and took deductions for the same totalling approximately $395,000.00 on its Federal income tax returns for the fiscal years ending 1967

* The Honorable Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

through 1970. The Internal Revenue Service disallowed these deductions. Thereafter Fed-Mart sued for a refund of taxes paid during those years. Following an adverse decision in the District Court, this appeal followed.

Section 163(a) of the Internal Revenue Code of 1954, provides that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." In this case, it is undisputed that the appellant is entitled to a deduction for the stated 6½% annual interest on the debentures. However, plaintiff asserts that it is entitled to an additional debt discount in the amount of the difference between the $100.00 face value of the debentures and the fair market value of the debentures at the time of the exchange, which it asserts was in the range of $61.00 to $78.00.

Deductions for discount on bonds issued on or before May 27, 1969, are covered by Treas.Reg. § 1.163–3(a)(1):

> "If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. For purposes of this section, the amortizable bond discount equals the excess of the amount payable at maturity (or, in the case of a callable bond, at the earlier call date) over the issue price of the bond (as defined in paragraph (b)(2) of § 1.1232–3)."

The courts have recognized debt discount as an additional cost involved in borrowing money. *United States v. Midland-Ross Corp.*, 381 U.S. 54, 66, 85 S.Ct. 1308, 14 L.Ed.2d 214 (1964); *Helvering v. Union Pacific R. Co.*, 293 U.S. 282, 284, 55 S.Ct. 165, 79 L.Ed.2d 363 (1934).

Original issue debt discount typically arises where an issuer sells its obligations on the market for cash at a price less than the face amount of the obligation. The appellant's case, however, does not involve the typical application of debt discount. Rather, it poses the unusual situation in which a corporation seeks a deduction for debt discount when it issues debentures in exchange for its own common stock. Other cases have involved the application of debt discount when debt obligations are exchanged for the issuer's own stock. See *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974); *Cities Service Co. v. United States*, 522 F.2d 1281 (2nd Cir.), cert. denied 423 U.S. 827, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975).

■ This Court, however, does not need to inquire into the propriety of allowing a deduction for debt discount in cases involving an exchange of debentures for the issuer's own stock. Even assuming that the deduction would otherwise be proper, the District Court held that Fed-Mart would not be entitled to a deduction because the market value of the debentures was a matter of pure speculation. This Court is bound by the District Court's determination in this regard unless it is found to be clearly erroneous. Fed.R.Civ.P. 52(a); *Maurice A. Garbell, Inc. v. Boeing Co.*, 546 F.2d 297, 299 (9th Cir. 1976); *Tri-Tron International v. A. A. Velto*, 525 F.2d 432, 435 (9th Cir. 1975); *W. S. Shamban & Co. v. Commerce & Industry Ins. Co.*, 475 F.2d 34, 36 (9th Cir. 1973).

After a review of the record in this case we cannot say that this finding is clearly erroneous.

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Allen v. United States*, 541 F.2d 786, 788 (9th Cir. 1976); *W. S. Shamban & Co.*, supra, at 36. We have no firm conviction that a mistake has been made here.

■ The District Court's findings were quite specific and detailed. The court analyzed each of the three methods by which Fed-Mart attempted to establish the market value of the debentures. Fed-Mart initially attempted to equate the value of the bonds with the value of the common stock

238

for which they were exchanged. However, such an equation "is unjustified where the transaction is insulated from the market place since the market forces which normally would bring about an equivalence of the two are absent." *Cities Service Co.*, supra, at 1290.

 Second, Sol Price testified as to certain purchases of Fed-Mart's debentures made in the four months following the exchange. Price conceded that no more than one of these transactions could be considered to have been an "arms-length" transaction. The District Court considered this evidence to be too thin to provide a market evaluation of the debentures.

 The taxpayer's burden in a suit for a refund involving transactions between related parties, requires the production of evidence of prices and terms which would have been obtained had the transaction been between unrelated parties. *Tulia Feedlot, Inc. v. United States*, 513 F.2d 800 (5th Cir.), cert. denied, 423 U.S. 847, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975); *Engineering Sales, Inc. v. United States*, 510 F.2d 565 (5th Cir. 1975).

 Third, Fed-Mart sought to establish a market value through the testimony of an expert witness, Fred Taylor, a corporate finance consultant to Fed-Mart. His evaluation was based primarily upon consideration of bond offerings of two corporations which were traded at approximately the time of the Fed-Mart exchange. Taylor's own testimony indicated that these bonds were of considerably higher quality than Fed-Mart's. The bonds were not comparable to the Fed-Mart junior subordinated debentures, yet the yield on these bonds did not differ significantly from the estimate range for the Fed-Mart bonds. The District Court also discounted Taylor's testimony because of his lack of familiarity with the financial condition of Fed-Mart at the time of the exchange, and his failure to evaluate both the prospects of the retail discount market at the time of the exchange and the type of consideration actually paid. "[D]ue regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R. Civ.P. 52(a).

 Additionally, the District Court correctly applied the law in this regard. In *Crosby v. United States*, 496 F.2d 1384, 1390 (5th Cir. 1974) the court stated:

"The taxpayer's burden in a refund suit in the district court is to prove not only that the Commissioner erred in his determination of tax liability but also to establish the correct amount of the refund due. [Citations omitted.] Thus, if insufficient evidence is adduced upon which to determine the amount of the refund due, the Commissioner's determination of the amount of tax liability is regarded as correct."

See *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor*, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623 (1934); *Tunnell v. United States*, 512 F.2d 1192, 1194 (3rd Cir.), cert. denied 423 U.S. 893, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975); *Engineering Sales, Inc. v. United States*, supra.

Accordingly, the judgment of the District Court is AFFIRMED.